Good afternoon, Council. We will be hearing one case this afternoon, and that is Board of Trustees, Plumbers and Pipefitters, Local Union, No. 74 Pension Fund, versus Jones, Land, Lasalle, Americas. Numbers 23-2202 and 24-2291. And we will begin with you, Mr. Paul. Good afternoon, and may it please the Court, my name is Brian Paul. I represent the defendant, appellant Jones, Land, Lasalle, Americas, and I'll reserve two minutes for rebuttal. Granted. The plain language and the structure of the CBAs in this case are enough to resolve this dispute. While the CBAs provide for an increased wage rate for overtime hours, they do not provide for an increased fund contribution rate for overtime hours. There's only one contribution rate for all hours paid, straight time, overtime, and all other hours paid, namely PTO, jury duty, holidays, and bereavement leave. Under Garden Variety Contract Interpretation Principles, the CBAs inclusion of an increased wage rate for overtime hours, and their omission of an increased contribution rate for overtime hours, unambiguously demonstrates that the parties did not intend to require contributions at a higher rate for overtime hours. Counsel, doesn't that beg the question? We have on Exhibit A, on the contribution rate sheet, it lists the base rate for wages, and then that per hour for the contributions to be made for the benefits. That wage rate increases, whether it's time and a half or double time, it's their differential rates. Why is it unreasonable to read hours paid as also supporting a similar increase, a corresponding increase in the benefits paid? Because you have to look at the agreements as a whole, and the only place in the agreements that it provides for an increase in the rate is the section governing wages. There is no corresponding direction to increase the rate of contribution. Well, there doesn't need to be if hours paid means the number of hours that are credited as hours paid. Aren't you asking us instead to interpret hours paid as the number of hours credited as hours worked? No, hours paid is a broader term than hours worked. Hours paid includes hours worked, but it also includes hours that are compensated but are not worked. Well, exactly. It's a number of, you seem to be arguing that the contribution, the paid, hours paid should mean the number of hours that is credited as hours worked, including the things like the holiday or vacation or jury duty. But credited as the number of hours worked rather than credited as the number of hours paid. Well, this gets to the issue of overtime and how overtime, the overtime rate is achieved. And under the FLSA, as well as under the CBAs, overtime is achieved by adjusting the rate of pay, not by artificially adjusting the number of hours paid. Well, that's true where we're talking about wages, but we're not. We're talking here about the benefit contributions, right? But the two go hand in hand. Again, the only place in the CBAs that provide for an adjustment in the rate is the section involving wages. And so we think about how do we achieve the overtime rate for purposes of those wages? And we look to the FLSA, which plainly provides that the overtime rate is a premium rate. The CBAs provide that as well. The CBAs also, by the way, provide that shift differentials are a premium rate paid in addition to regular hours paid, yet the funds aren't arguing that the contribution rate should be adjusted for wages paid with a shift differential. They're only arguing that it should be adjusted for wages paid based on overtime. That doesn't make any sense. You can't have it both ways. The other thing that supports our interpretation are the standard remittance forms. And this is at 574 of the appendix. It provides the total hours paid are to be reported at a single rate. In contrast, there's testimony that for contracts that provide for a higher contribution rate for overtime hours, the standard remittance forms require reporting hours paid at multiple rates. That's not what we have here. Can you look with me at appendix 593, the Exhibit A, the wage schedule, which has the hourly base rate and then the contribution per hour paid. It also makes provision for deductions hours paid with certain funds and out per hour works for the market recovery fund. Should we read that as indicating that there is a difference in the term and hours paid and how we should think about that versus hours worked? Yeah, again, hours paid is broader than hours worked. Hours paid includes hours worked, but it also includes hours that are paid that are not worked such as holiday, PTO, and the other things. So we've talked about the standard remittance forms. We talked about the FLSA. Those things corroborate our understanding of the agreement. And the last thing that we need to talk about that the district court did not is industry practice. So we need to talk about that because it's well settled that industry practice forms part of the contract. Do you agree that industry practice at step one in determining ambiguity is one of the things that provides objective indicia of whether or not there is a different meaning of which a term is capable? I think industry practice, because it is part of the contract, has to be considered at step one. Is the agreement ambiguous? And here, the unrebutted industry practice evidence is that when parties intend for a higher contribution rate to apply to overtime hours, they state that explicitly. We put into the record CBAs between JLL and Locals 313, 420, and 68, all of which expressly provide for a higher contribution rate for hours paid when the hour at issue is overtime. And the CBA with Local 313 is particularly relevant because some members of Local 74, the union at issue here, are paid under that CBA because of the building they work in. Now, talking about industry practice, we have here the CBA from C&W that seems to reflect an industry practice going back a number of years with the fund's interpretation of hours paid. Is that something that is legally relevant as we consider what hours paid means in this agreement? Of course, the prior employer's understanding and interpretation of the agreements can't bind the new employer, but more equally important, I should say, on the eve of taking over the Chase facility, we expressly disclaimed all unwritten past practices. But we're not talking about unwritten practices. We're talking about the interpretation of a written term. And it's undisputed that Cushman & Wakefield never put into writing its understanding and reasoning for paying a higher contribution rate for overtime hours. That was not in writing. There's no evidence that we knew of it, but in any event, we disclaimed all unwritten past practices and that included Cushman & Wakefield's understanding of the agreement. Well, would Cushman & Wakefield's understanding of the agreement indicate industry practice, or do you need more? It certainly indicates their interpretation of the agreement. But the problem here is that the rest of the industry practice evidence that we submitted seemed to have been overlooked by the district court. The district court did not discuss any of the CBAs that we put into evidence, showing that when parties want a higher rate to apply, they say that explicitly. And that's not what happened here, of course. There's one rate for all hours paid. Can I ask you a question about that? If we get that far, what's the applicable standard of review for us to overturn the court's determination about industry practice? It's clear error. And how can we say that the court clearly erred given its description, given its analysis of the industry practice? Yeah, for one main reason, and that is that the court primarily relied on the testimony of Marta Cooper, who works for the auditor, and Scott Ernstberger, who works for the third-party administrator. And there are two main problems with their testimony as to industry practice. Well, even before that, neither of them were involved in the bargaining of the agreement, so they can't shed any light on the party intent. But as to industry practice, they couldn't shed any light on what parties do when confronted with language that JLL was confronted with. The question here is not whether employers generally pay a higher contribution rate for overtime hours. The question is whether employers do so when they have an agreement with the same language that's at issue here, and neither could offer any evidence on that issue. Scott Ernstberger. The question for us is whether the term hours paid is capable of the meaning ascribed to it by the fund, right? In determining that, you have to look at the structure of the agreement. But is that the relevant question at first step? Is it susceptible to reasonable, different reasonable interpretations? If that's what you mean, yes. That's the issue as to ambiguity, but that's a question of law that is reviewed de novo. If there's, we're not at step one to resolve ambiguity, right? I'm sorry. We're not at step one to be resolving ambiguity, right? We're just identifying if there is ambiguity. Right, step one is, is there ambiguity? That's a question of law. Step two is, if there is an ambiguity, did the district court clearly err in determining that the contracts mean what the court ultimately concluded they mean? And there's simply no evidence supporting the court's understanding of industry practice. Well, the court found credible the testimony of the fund's two witnesses. Correct, and let me- As to industry practice and the interpretation of the term hours paid. Yeah. And as to industry practice, didn't jail's own witness also testify that payments to the funds could be using the hours credited as hours paid, that is the fund's interpretation, and that that was decided in different collective bargaining agreements on a case-by-case basis? I don't recall that testimony, but let me discuss the testimony that I do recall and that I think is most important for your analysis. And this requires some careful reading. As to the two witnesses that the judge primarily relied on, Scott Ernstberger, a third-party administrator, he could not say whether the CBAs he administered had the same language as the language in the JLL CBAs. In fact, he admitted he wasn't even familiar with the language in the JLL CBAs. In fact, when confronted with one of the CBAs he mentioned, the one for Local 420, he had to admit that it expressly provided for a higher rate of contribution for overtime. And then Ms. Cooper, she identified only one set of funds that supposedly interpret the same hours paid language, namely the District Council 21 funds, but she admitted that that language is not in the CBAs. It's in the rate sheets, which she distinguished, and she said that those two are separate. So neither could offer an example of a contract with the same language that is interpreted the same way, or was interpreted the same way, as the agreements at issue here. You need language that's identical in another CBA to... You at least need similar language. The question, again, is not generally whether employers pay contributions higher for overtime hours. You have to have similar language, hours paid language. So going back to, as I think we all agree, the question at the ambiguity stage, whether there is an alternative reasonable interpretation, or as our cases have sometimes put it, whether the term is capable of another interpretation. You're asking us to say that the reading of hours paid as supporting one of the industry practices that all agree are out there in the marketplace, that that alternative reading is not reasonable. That's exactly what I'm asking for. And that, which would mean that the reading of it as having an alternative meaning by the independent auditor, by the third party administrator, by the witnesses for the funds, funds that were accredited by the district court, by other unions, and by the district court, that is a circuit judge who's sitting as the district judge here, that those were all unreasonable. That's exactly what I'm saying. The district court gets no deference. This is an issue reviewed de novo, number one. Number two, there is no industrial practice evidence, as I've explained, that supports the funds interpretation. Two, the standard remittance forms back up our interpretation. Three, or four, the FLSA backs up our interpretation. There is simply, and our conduct backs up our interpretation. There has been no deviation in the way that we have paid contributions. The district court said, well, you were aware of how they were paying, you were aware of how they were interpreting the agreement, but they weren't aware of how you were interpreting the agreement. That's simply incorrect. Anthony Papili, the business manager for the union and fund trustee, admitted on the stand that they knew from 2013, after the Honeywell audit, they knew exactly how we were interpreting the agreements. And the parties continued to enter into agreement after agreement after that. If they didn't know, they certainly should have. We had an unbroken practice of paying contributions according to a single rate for all hours paid. Of course, they say the same for what you knew or should have known as a result of due diligence. My only point is it goes both ways. So, let me just ask you about that due diligence review. Because you say in your brief that Mr. Beckley testified nearly the JLL reviewed labor costs at the individual level and that there's zero evidence what individual level labor costs means. The transcript of his testimony reflects that what he talked about was labor costs at the individual employee level. Was the omission of the term employee deliberate? And why was it omitted? I'm not sure which, I'm generally familiar with the quote. I'm not sure generally what you're referring to in the brief but let me just say this. There is no evidence as to what JLL received in the due diligence process or based on what it did receive that it could tell how Cushman & Wakefield was paying contributions. But, more importantly, again, JLL, upon taking over the Chase facility, expressly disclaimed unwritten past practices. In Cushman & Wakefield's practice of paying contributions at a higher rate for overtime, undisputedly was an unwritten past practice. The other side agreed that that interpretation was never reduced to writing. So, I'm not sure I understand the distinction that you make is anytime there's a different interpretation of the written terms of a contract, in your view that becomes an unwritten past practice rather than a written term of the agreement? Well, it's certainly an unwritten past practice because they admitted that this was never reduced to writing and never became part of the agreement. It's not, even if we would not disclaim unwritten past practices, it's not clear how we could possibly be bound by Cushman & Wakefield's understanding of the agreement. When we specifically said, we're not a successor, we're proposing modifications to the agreement and we disclaim all unwritten past practices. But, the term hours paid, the language that was in that collective bargaining agreement is substantially identical to the language in the collective bargaining agreements that you agreed to follow in the letter as to terms and practices and then going forward. The language was the same. What the difference maker here is that we disclaimed unwritten past practices. Cushman & Wakefield's practice of paying contributions not only was unknown to us, but was unwritten. And we disclaimed all of that. We did not assume their interpretation of the agreement. The agreement, therefore, ought to be determined, the meaning ought to be determined de novo. We cannot be bound by that agreement or that understanding of the agreement unless we expressly assumed or impliedly assumed that interpretation. And there's just no evidence that we did. Is there a difference between disavowing the prior employer's interpretation of written terms in the agreement and disavowing unwritten past practices? No, it seems to me that paying contributions the way that Cushman & Wakefield did based on a higher rate for overtime hours was an unwritten past practice based on its unwritten interpretation of the CBAs. Other questions? Thank you. Thank you. Mr. Fehan? Good morning, good afternoon, I should say. May it please the court, I'm W. Daniel Fehan. I represent the local 74 benefit funds in this action. Before I get started, I want to thank the court for its courtesies in rescheduling today's oral argument in light of recent events. Our condolences. Thank you, I appreciate that. So, as we argued in our brief, the district court correctly determined that the terms in the collective bargaining agreement are ambiguous. Now, how do we know they're ambiguous? We're reviewing de novo, as your colleague has pointed out. So, tell us when time and a half is really a rate for overtime, why should we be importing that to an understanding of hours paid? So, first and foremost, the CBAs clearly state the contributions are going to be due on hours paid. Let's take a 30,000 foot view here. If they're not going to make contributions on overtime hours, then the workers that are putting the overtime hours in do not have the benefit of the fringe benefit contributions that they could be entitled to upon retirement. For example, pension, annuity. They're being short circuited in the sense that... It begs the question of whether they're being shorted or not, we have to look at the particular words here. So, time and a half, Black's Law Dictionary, it's a rate of pay, one and a half times normal wage. I see you nodding. And Merriam-Webster, it's a rate, one and a half times the regular wage rate. And again, I see you nodding, not disputing that. And your friend on the other side argues some force under the Fair Labor Standards Act is a rate. One is paid at a rate, one and a half times the rate for the fixed number of hours, correct? That's correct, but again... So let's look at the provisions here. We have three Honeywell CBAs that are basically the same and three JP Morgan CBAs that are basically the same. So looking at the first Honeywell one, I'm looking at section 15, overtime callback on call pay. It's in appendix 2460. And the language isn't the same in all three Honeywell ones. The very first entry under that is time and a half shall be paid for all hours worked over 40 hours. That appears to be a rate of one and a half for those hours. There's nothing in it that says anything else. It appears to track those dictionary definitions and the FLSA definition. But again, as we argued in our brief, the FLSA does not contemplate the remittance of benefits. Okay, explain to me, is there any reason not to read time and a half as a wage rate? Is there anything about that phrase that implies that it inflates the number of hours rather than increasing the wage rate? Well, the purpose of overtime is... Do you have a dictionary definition or a statutory definition that treats it otherwise? If I do not, but under the agreement, if there's 1.4, 1.5 hours of overtime, that 0.5 is still the amount of hours worked and paid because they're going over the 40 hours. Okay, I would like to know about section 15. Is there anything in this Honeywell CBA, the discussion of overtime that says that or strongly implies that? That specifically says that? No, it does not say that. Is there anything outside of section 15? No, there is not. Let's go to the J.P. Morgan Collective Bargaining Agreement. Article seven, section six, and it's the same in all three J.P. Morgan ones. So the first one is appendix 2428. 6A says time and one half, and then it spells it out in numerals, shall be paid for all hours worked during work week and all hours more than the regularly scheduled shift of eight hours. Is there anything in that that says or strongly implies that's anything other than an increased wage rate as according to those dictionary definitions in the FLSA? There's nothing in the- There's not. Okay, elsewhere. It says that. Elsewhere in the J.P. Morgan CBA, is there any other language that says or strongly implies that we should read this not as increasing the wage rate, but as increasing the hours? Specifically right in the CBA, and you're correct, right across the board, the company agrees to make contributions to the fund in the following amounts per hour for each hour that the employee is paid. Okay. So the overtime rate, if it's an hour and a half paid, they owe contributions on that extra .5, as the, and I do want to point out that Appellant is conveniently leaving out two witnesses, but they didn't really put- Okay, but we don't get to the witnesses if there's not an ambiguity. So you can't give me some language. Is there something about the structure of the agreement or the way the provisions work together that creates an ambiguity that would invite us then to go to those things? Well, I'm arguing- Step two. We're at step one right now. Right, right. And as we argued in our brief, we're not saying that it's not ambiguous. No, we're, I'm asking why it's ambiguous till you even get there. Because for the same reasons, for, and no mention in these collective bargaining agreements do they mention that for overtime hours that the contribution rates will be, will be adjusted to, for those overtime rates. So you've not given me a basis to read time and a half any other way. To be clear, the sections that we've been looking at and that Judge Vivas has been pointing you to, the section 15 in one and the provision we were just looking at in the other, are those the sections that deal with benefits contributions? Or are those the sections that are dealing with- Yeah, those are hourly wage sections. Yeah, just wage sections, you're right. So those are dealing with wages. And your point is that we should be looking at the section dealing with the contributions to trust funds for the interpretation of hours paid in that context? Yes, correct. The hourly rate is set forth clearly in the CBA. So if there's an hourly rate clearly in there, and again, these health and welfare pension fund annuity funds, that's all by percentage or whatever the parties agreed to for the collective bargaining agreement. And you're not- So if there's an hourly rate, then it makes sense that the overtime rate would be, would also be considered an hourly rate at that extra 0.5 hours. Which you have presented evidence is the practice under some collective bargaining agreements. Yes, your friend on the other side made a point that the testimony, et cetera, did not involve any agreements that used the same phrasing. Is there any agreement out there that used the same phrasing as this, as to which there was testimony about what the industry practice was? Do you mean in terms of other CBAs with other unions? Other CBAs that tracked the language I was talking about in section 15, or article seven, section six, or the exact language here that established an industry practice as to such provisions, such wording. Personally, in local 74, didn't proffer any evidence to show that there's other CBAs that interpret it that way. But again, it's axiomatic in federal labor law, and in any type of labor law, when you're dealing with collective bargaining agreements, that you typically look at the four corners of the agreement. And here, as the appellant pointed out, they're not parties to these collective bargaining agreements. What happens is, the union negotiates with the contractor's association, and they come to an agreement, and then the employer signs on to the agreement that had been formed between the two parties. Are there other collective bargaining agreements in the record that use the term for each hour paid in the benefits section that have been interpreted to preclude your reading? I don't believe there's anything in the record, but I believe that at least maybe Scott Ernstberger or Marta Cooper did. Correct me if I'm wrong, but they did testify that other unions have done it. And again, Marta Cooper does, this is exclusively what she does. She audits benefit funds, and Scott Ernstberger, who works for Zenith American Insurance, they strictly administer benefit funds. But there weren't any CBAs introduced that used the phrase, hour paid, that adopted your reading of it? On behalf of the funds, I don't believe there were. And there weren't any introduced that rejected it either. Is that right? That's correct. You talked about the four corners of the agreement, and that's certainly part of what our case law says we look at, but our case law also says that we look to the reading put forward by the parties and extrinsic evidence, where it produces an objective indicia of meaning. So where do we draw the line in considering extrinsic evidence? Since we're not to look at extrinsic evidence to manufacture a different meaning, we manufacture ambiguity, as the case may be. Is it appropriate to look to testimony as extrinsic evidence in making the determination about ambiguity at step one, or is testimony something that should only be considered after there's a finding of ambiguity? I think the intention of the parties is always relevant, but more importantly, when there is ambiguity, and as the appellant mentioned in their brief, extrinsic evidence should only be used to eliminate the party's understanding of the contractual language. Let me take a step back, though. You started at the beginning of that answer with if there is ambiguity. And the question really is, what can we look at to determine whether there is ambiguity? Do we only look at the whole corners of the agreement? Are there instances in which we can look at extrinsic evidence? If so, when is that? When can you look at extrinsic evidence to tell you that there is ambiguity? And does that extrinsic evidence include testimony? Well, as the appellant is arguing that we're looking at the plain meaning of the contract. So admittedly, and we argued in our brief that there is no plain, any type of provision in there saying, contemplating remitting contributions on overtime hours worked. Now by that, do you simply mean that hours paid is not defined? Hours paid is defined only to the extent that there's an hourly wage rate noted specifically in the CBA. And is your position that the fact that it is not defined makes it ambiguous? The fact that the CBA doesn't contemplate, doesn't have a separate wage rate for contributions, then you can, there's certainly an argument that it is indeed ambiguous, absent some plain language to the contrary. Now there is case law that suggests, when you're talking about contractual interpretation, that you look to plain language. And then one of the things that's helpful when you're looking to plain language is dictionary definitions. As you heard Judge Bevis recite a few different definitions that all define hours paid, define overtime, I'm sorry, the same way as, reflecting wage rather than anything else. My question for you is why wouldn't we look to those definitions that Judge Bevis outlined for us and say, all right, there is a plain meaning. We can look to Black's Law Dictionary, Webster's Dictionary to answer this question and we need not go further. Um, my only pushback with that would be that because we're dealing with collective bargaining agreements and that there's a presumption that both parties come to the table with equal bargaining power, that that's certainly a consideration. But what we really need is the people that were on the ground or have specific expertise in auditing these funds and working with the tools as the two witnesses at the trial court did, Anthony Papilli and business manager Mike Hackendorf, which again, was not contemplated in their brief. If we took your approach, wouldn't there always be a genuine issue, material fact with competent lawyers and we wouldn't be able to grant summary judgment on this because we wouldn't be able to resolve cases at step one? Do you mean if there- You would put in witnesses who said that this was our understanding and there were some people in the industry and they would put in some others and then we'd wind up really breezing past step one, it'd be step two and it would be very hard to grant summary judgment in such cases, wouldn't it? We'd have to have trials. I would agree with that. I mean, I've done collection cases since 2017 and courts in the District of New Jersey specifically rarely grant summary judgment because all the other party has to say is like, no, that's not really what we agreed to. That wasn't the understanding of the parties and the courts will, rightfully so, kick the can down the road and proceed to trial if necessary. Is that to say that there's no term that is unambiguous? Well, I think there's plenty of terms in the CBA that would be not ambiguous. So again, help us because we have, our case in Rolls-Royce says that when we're evaluating ambiguity, we are required to, quote, consider the contract language, the meaning suggested by counsel and the extrinsic evidence offered in support of each interpretation. So, where do we draw a line so that there are terms that in fact are unambiguous if we are looking to extrinsic evidence, including testimony from witnesses for both sides that offer different readings? Perhaps the easy answer is if it's clearly stated in the contract, is that that's where you can draw the line. If it's not clearly stated in the contract, then you can make an argument if it's ambiguous, especially if there's other portions of the CBA that contradicted or perhaps shed some different light on it as there clearly is in these contracts. Okay. Thank you. I'd like to make three points. Number one, the fact that the CBAs provide for an increase in the wage rate but not the contribution rate does not give rise to an ambiguity. It tends to show that the parties did not intend for the contribution rate to be adjusted for overtime hours paid, and that's particularly true when we compare all of that to the other CBAs in the record. But again, isn't the question whether hours paid is susceptible to a reading of an increase in the number of hours credited? But under Rolls-Royce, you cannot take that term in isolation. You have to look at it in the context of the entire agreement, and that includes the provisions governing the increase in wages for overtime as well as all of the other provisions, which leads me to Judge Bibas's questioning on the FLSA. I don't think you need to get to the definition. In a dictionary about what is being adjusted, 29 U.S.C. Section 207A1 says, employees can't work more than 40 hours, quote, unless such employee receives compensation for his employment in excess of 40 hours at a rate not less than 1 1⁄2 times the regular rate at which he is employed. And further down in Section 207, it refers to overtime rate as a premium rate which mirrors what the CBAs call it. They call it a premium rate. But again, we're not talking about overtime wage payment, right? You have to understand how wages are dealt with and compare that to how contributions are dealt with. So if we look at the, doesn't wage schedule in Exhibit A do that at Appendix 593? So it gives a base rate, and then a per hour's paid rate that presumably corresponds to the base rate as appears in this list where we generally interpret things in a list to go together. If we view base rate as something variable, why isn't the contributions listed under it also conceivably, again, we're not asking about the best interpretation. We're asking about whether it's even susceptible of an interpretation that those would be adjusted and increased in lines two to six just as line one might be increased. It is only susceptible if you look at that schedule in isolation. But if you look at it in the entire context of the agreement as Rolls-Royce instructs, you have to come to the conclusion that the parties intended for wages to be increased for overtime, but not contribution rates. And that's particularly true when you compare it to the other agreements that are in the record. My friend admitted there are no other agreements in the record with the same language that have been interpreted the same way that they are interpreting the agreement at issue here. And do you also agree that there are no agreements in the record with that language that reject that interpretation? Yes, and that proves nothing. If the point is we're trying to figure out what is industry practice, we have to look at what people are actually doing under the agreements that they are subject to. If they are paying contributions for per hour paid based on a single rate in agreements like us, that's significant. If they are paying contributions differently when the CBA say provide higher contribution rates for overtime, that is significant because that is what people are doing. That is practice. The fact that they are not doing something to me is probative of nothing. If we disagree with you on ambiguity at the next step, at the party's intent, there we're reviewing for clear error, right? Correct, correct. So if we get past step one, does that necessarily mean you don't prevail on appeal? No, because there is no evidence supporting their interpretation. And I want to hone in again on the witness testimony because that seems to be the testimony that the district court primarily relied on and that my friend is relying on. I think we just heard an admission that neither of the main witnesses at issue were relying on a contract that had the same language as the CBAs at issue here. Again, the question is not whether employers generally in the ether pay higher contribution rates for overtime hours. It's what do they do when they have an agreement like this? And the only evidence in the record, the only evidence in the record, the unrebutted industry practice evidence is that if they want a higher contribution rate for overtime hours, they say it. In terms of evidence in the record, why shouldn't we understand that that testimony to reflect the witness's view that under industry practice, the term hours paid has the meaning that they were ascribing to it? Because it's not tied to any language that is in a CBA that is like the language at issue here. Again, Scott Ernstberger admitted he wasn't even familiar with the language in the CBAs that we have. He admitted that. It's at 312 to 316 in the appendix. And then Cooper identified only one set of funds that supposedly paid the same way that she is advocating that the funds are to be paid here. But she admitted that the language she was relying on was not in the CBAs. It was in something she called the rate sheets, which she distinguished. So you have no similar CBAs in the record. You have no interpretation based on similar CBAs in the record. And all of the evidence goes the other way from the standard remittance forms, background FLSA law, and our conduct. I have a couple of questions if we reach the issue of interest. But before we get there, do my colleagues have any other questions? So on the question of interest, you say that the employer agreed to be bound by only reasonable rules and regulations. And you're relying on nutrition management for the proposition that these plan documents are not, don't include these rules and regulations. But here we've got the trust agreement itself that talks about adopting rules and regulations and that they will be followed by the employers and participants and beneficiaries. So why shouldn't we view that as a mandate that comes from the trust agreement itself? Yeah, I have to admit, I think in discussion of that Second Circuit case, we injected unnecessary confusion. We are bound. We agreed in the CBAs that we would be bound by trustee policies. But only if they're reasonable. And so the question becomes, is an 18% interest rate under these facts and circumstances reasonable? And this is literally a million dollar issue. And I submit to you that under the facts and circumstances of this case, it is not reasonable. And I suggest three guideposts to see this. The first is the purpose of prejudgment interest. The second is the default statutory rate. And the third is the minimum funding rate for the pension plan. As to the purpose, the purpose of prejudgment interest, the Supreme Court has told us, is to compensate for the time value of money. It's not to punish someone. But 18% does punish a JLL. And we know that for two reasons. One, the funds have offered no evidence that they need 18% prejudgment interest to make them whole. And secondly, under ERISA, the funds are already entitled to liquidated damages. So if you add 18% prejudgment interest onto that, you are essentially giving them a windfall. And that is particularly true when we compare that to the default statutory rate. ERISA says the plan rate governs. If there's no plan rate, we look to an IRS tax code statute. Here there is no plan code rate. There's only a policy, which is different. And that suggests, the statute suggests, that Congress believed that the tax code rate generally would make funds whole, okay? And during the relevant time, the statutory rate ranged from three to 7%. The trustees 18% rate is 250% to 600% over that. And then we have the minimum funding rate. Between 2015 and 2021, the pension fund projected rate at which the funds would grow was between seven and a quarter and seven and a half percent. So the trustees rate is over 200% that. So what we're asking you to do here is to, if you agree on the merits as to liability, that you order the statutory rate to be paid. One, because the trustees policy is unreasonable. And two, because the funds do not claim that the statutory rate would not make them whole. And then finally, let me. So are you not then, you're not making the argument that the collection policy is not a plan document? It is not a plan document. ERISA, and we cite Supreme Court case law to this effect, ERISA carefully distinguishes between plan documents, founding trust documents, and CBAs, and policies adopted pursuant to those agreements. And I don't think there's any question here that what we have here is the latter. It's a policy. And we agree by contract that we would only be bound by the trustees policies to the extent that they are reasonable, which so begs the question, what is reasonable? The collection policy itself in Appendix 166, there are signatures under the term employer trustees. Is that JLL itself, or what does employer trustees mean in that context? Half the trustees on the funds are employer trustees, and half are union trustees. We're not one of those trustees. It's the Delaware Mechanical Contractors Group, I think, that makes up those trustees. Again, no question we're bound by the policy, but the policy has to be reasonable per the CBA. And so that's the question here. Is 18% reasonable? And let me just finally add that there's no dispute that the appropriate post-judgment interest is governed by 28 U.S.C. 1961. It's not governed by this trustee policy, so at a bare minimum, the court should reverse that issue. Thank you. All right, we thank both counsel for argument today, and we will take the case under advice.